UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MADY HORNIG, M.D.

               Plaintiff,

       vs.                                         17 CV 3602 (ER)

TRUSTEES OF COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK and
WALTER IAN LIPKIN, M.D.

               Defendants.
-------------------------------------------------------------------x

REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR
<u>PRELIMINARY INJUNCTION</u>

Herbert Eisenberg
Julian R. Birnbaum
EISENBERG & SCHNELL LLP
233 Broadway, Suite 2704
New York, New York 10279
(212) 966-8900

Rosalind Fink
BRILL & MEISEL
845 Third Avenue, 16th Floor
New York, New York 10022
(212) 753-5599

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES…………………………………….....................................ii

PRELIMINARY STATEMENT……………………………………………………….1

STATEMENT OF FACTS......…………………………………………………………1

ARGUMENT…...................................................................................................................3

      PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF…...................3

    *A.*       *Plaintiff acted reasonably and promptly to seek preliminary relief*……………...3

    *B.*       *The injury from defendants' actions constitutes irreparable harm* ………………4

    *C.*       *Plaintiff has shown likely success*…………………….……………………..………7

    *D.*       *The balance of hardships favors plaintiff*…………………………....…………....8

CONCLUSION………………………………………………………………………...9

TABLE OF AUTHORITIES

Page

*Alvarado v. Nordstrom, Inc.*,
    685 Fed. Appx. 4 (2d Cir. 2017) (summary order ……………………………………..8

*Ahmad v. Long Island Univ.*,
    18 F. Supp. 2d 245 (E.D.N.Y. 1998)………………………………….….....................5

*Bagley v. Yale Univ.*,
    No. 13-cv-1890 (CSH), 2014 U.S. Dist. LEXIS 177611
    (D. Conn. Dec. 29, 2014)……………………………………………………………3, 4

*Balaklaw v. Lovell*,
    No. 92-CV-817, 1992 WL 310790 (N.D.N.Y. Oct. 16, 1992)……………………...........5

*Berman v. N.Y.C. Ballet Inc.*,
    616 F. Supp. 555 (S.D.N.Y. 1985)…………………………………………………….7

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999)…………………………………………………...............5

*Faro v. New York Univ.*,
    502 F.2d 1229 (2d Cir. 1974)………………………………………………….....5

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
    13 F. Supp. 2d 417 (S.D.N.Y. 1998)……………………………………….......................4

*Ja Qure Al-Bukhari v. Dep't of Corr.*,
    720 Fed. Appx. 655 (2d Cir. 2018) (summary order) ……………………………………8

*Peck v. Montefiore Med. Ctr.*,
    987 F. Supp. 2d 405 (S.D.N.Y. 2013)………………………………………………….7

*Pollis v. New Sch. for Soc. Research*,
    829 F. Supp. 584 (S.D.N.Y. 1993),
    *rev'd in part on other grounds*, 132 F.3d 115 (2d Cir. 1997)…………….…......................6

*Rubin v. University of Minnesota*,
    653 F.2d 351 (8th Cir. 1981)………………………………………................................4

*Solus Alt. Asset Mgmt. LP v. GSO Capital Partners L.P.*,
    No. 18 CV 232 (LTS) (BCM), 2018 U.S. Dist. LEXIS 13961
    (S.D.N.Y. Jan. 29, 2018)……………………………………….....................................5

## PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law in Reply to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction ("Def. Mem.") and accompanying Affidavit of Mady Hornig, M.D. in Further Support of Motion for Preliminary Injunction ("Hornig Supp. Aff."). Defendants apparently hope that their generalized and unjustified assertions of "delay" in seeking relief, lack of harm, and deference to academic/medical professionals will distract from their misconduct that is the subject of plaintiff's motion. As demonstrated below, defendants' opposition fails to address both the factual and legal (*see* below at 4-7) irreparable harm that money cannot recompense and which the Court is well able to consider.

## STATEMENT OF FACTS

In response to plaintiff's motion and the Court's order (ECF No. 29), defendants addressed their threatened destruction of the irreplaceable biological samples Hornig has amassed and needs for her work by going "above and beyond the Court's order" (Def. Mem. at 7 n.4), agreeing to give plaintiff at least two weeks' notice before discarding samples. They promised to provide "whatever resources are necessary and appropriate for the grant, as set forth in and funded by the grant documents." (Hornig Supp. Aff. ¶4) On September 4, they promised her direct and remote access to necessary computer equipment with Luminex software, and on September 6, access to an experienced data manager, programmer, biostatistician, and clinical data needed for her work. (*Id.* ¶¶9-19) On October 4, the day before defendants' opposition papers were due, they told plaintiff for the first time they had identified laboratory space that (although they had known but forgotten to tell her about it) was ready for her. (*Id.* ¶24) In their

opposition, Dean Santella stated that Hornig would have the same access to the 17th floor as other non-CII faculty members. (*Id.* ¶49)

Although some of these promises have yet to be implemented (*see id.* ¶¶, 18, 33-34, 38, 41, 43, 46, 48-51) and defendants have refused to address other harms (*see id.* ¶¶37, 39-40, 44, 47) – for which injunctive relief is still required – defendants' actions confirm that Hornig's identified needs were necessary for her to perform her scientific work in order for her and Columbia to comply with grant obligations, to enable her to obtain future grants, and enable her to publish papers based on her past and present research. These needs, if they continue to be denied, could not be compensated by money damages in the future.

Although defendants complain plaintiff did not move for injunctive relief sooner, Hornig was participating in good faith in the referral to the Court's Mediation Program until impasse, shortly after which she was told Columbia had decided to evict her from her office in the Center and move her to a different location. (*Id.* ¶¶26-27) She did not know this move would occur while she was in scientific meetings in Europe. Her exclusion from planning for and the move itself, and Columbia's failure adequately to address her basic needs thereafter created numerous obstacles that could have been avoided, and many of which have still not been fixed. (*Id.* ¶¶28-31) She was not told prior to Dean Santella's May 31, 2018 e-mail that her membership in the Center was also being revoked. (*Id.* ¶29) Upon returning, not only did she attempt to resolve the immediate problems of making her new office functional, but she tried to address the other resource issues as well. (*Id.* ¶¶8-19, 25, 30-31) When those efforts failed, Hornig sought judicial intervention.

Defendants hold Hornig's many prior attempts at resolution against her even as they now argue that judicial intervention is inappropriate because they have, since filing her injunction motion, addressed some of the barriers created by the eviction and move.

## ARGUMENT

## PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

**A.** ***Plaintiff acted reasonably and promptly to seek preliminary relief.***

Plaintiff did not "delay" moving for injunctive relief. Defendants told her they were going to relocate her office on May 15, 2018 (*id.* ¶27), at which meeting she protested and questioned how she would be able to conduct her funded research (Hornig Aff. ¶27) She and Columbia communicated about her concerns on May 31, and also, after she returned from scientific meetings in Europe and raised concerns about the move, on June 8 and 19. (ECF No. 34-2; Hornig Suppl. Aff. ¶30) Issues as to destruction of her samples arose when defendants failed to provide inventory lists until July 13 and 20, and August 15, and confirmed on July 25 that samples would be destroyed. (Hornig Aff. ¶¶36-39) Plaintiff raised these matters at the Court conference, which was rescheduled once, on July 19. Hornig filed her motion on August 17, 2018 – within three months of first being told of the relocation decision and of returning to see her new office. This "delay" is not inconsistent with irreparable harm. Nor is it "inexplicable" delay because during this period she tried to resolve with defendants the issues they caused, *see*, e.g., plaintiff's communications with Dean Santella and Dean Linda Fried (Hornig Supp. Aff. ¶¶25, 30), and then brought the matters before the Court.

As the holding in *Bagley v. Yale Univ.*, No. 13-cv-1890 (CSH), 2014 U.S. Dist. LEXIS 177611 (D. Conn. Dec. 29, 2014), that defendants do not cite (Def. Mem. at 13) makes clear, a three-month period – during which the parties there attempted to solve discovery issues,

3

analogous to the time here during which Hornig attempted to work out what she needed with

Columbia and brought the matters before the Court – is not such a long or inexplicable delay that

contradicts the existence of irreparable harm. 2014 U.S. Dist. LEXIS 177611, at *9-10. Indeed,

in *Bagley*, the far longer period of approximately eleven months from filing to preliminary

injunction motion was explained, and thus not inconsistent with irreparable harm, by

consideration of defendant's motion to dismiss as part of the "sensible ordering of the priorities

of litigation." *Id.*, 2014 U.S. Dist. LEXIS 177611 at *8-10.[1] Here, the Court referred the parties

to mediation on July 26, 2017 (ECF No. 14), and ten months later the mediation was closed as

unsuccessful on May 30, 2018 (ECF No. 16).[2]

**B.**     ***The injury from defendants' actions constitutes irreparable harm.***

      Contrary to defendants' assertion (Def. Mem. at 15), plaintiff cited cases (Pl. Mem. at 9-

15) that support a finding of irreparable harm from the adverse effects on her research. This

irreparable harm injures both her and the public interest in her medical research which the NIH

has judged worthy of governmental support.[3] Hornig's claim on this motion is not for

---

[1]    To the extent defendants complain that plaintiff waited "*another* month" after the July 19 conference to file her motion (Def. Mem. at 13, emphasis in original), *Bagley* explains "Events occurring within a month of each other are almost simultaneous, at least as the law measures the passage of time. This is not 'delay' in any meaningful sense." 2014 U.S. Dist. LEXIS 177611 at *7.

[2]    Similarly, even if the time from commencement to plaintiff's motion lacked an explanation, the time periods in the other cases cited by defendants (Def. Mem. 13-14) were longer than the three months here after defendants announced their intention or acted against Hornig. Defendant's citation (Def. Mem. at 14) to "more than two months" in *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998), is particularly misleading because they omit the beginning of the paragraph that, like the "listing examples" of cases cited in *Gidatex*, says this length of time period applies in trademark cases.

[3]    Defendants respond only that these cases arise in different contexts (Def. Mem. at 16-17 n.8), but that does not invalidate their reasoning that irreparable or possible irreparable harm arises in many contexts including academic research. They single out *Rubin v. University of*

termination of her employment,[4] but rather that defendants are preventing her from fulfilling her

obligations under funded grants, are failing their own obligations to her under the grants, and are

harming her ability to publish papers based on her research and to obtain future grants.[5] Plaintiff

is not asking the Court to substitute its judgment as to matters of medical treatment, as in

*Balaklaw v. Lovell*, No. 92-CV-817, 1992 WL 310790 (N.D.N.Y. Oct. 16, 1992), or academic

---

*Minnesota*, 653 F.2d 351 (8th Cir. 1981), for "unique circumstances; but those included not only that trial was about to take place, but also, as present here, threatened possible funding and continuity of research projects and grant applications. *Rubin*'s conclusion thus applies here as well.

[4]    Thus defendants' argument and cases (Def. Mem. at 14-19) that damages resulting from employment discharge are compensable in monetary damages do not take into account what Hornig has shown as injury.  The court in *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 248-49 (E.D.N.Y. 1998), treated plaintiff's claim as one for employment termination with reputational damage, which could be compensable in damages.  Although the plaintiff claimed there would be a general loss of valuable future research, there were no allegations of ongoing research projects, funded grants, grant applications, or anything like loss of samples as Hornig has alleged.  *Solus Alt. Asset Mgmt. LP v. GSO Capital Partners L.P.*, No. 18 CV 232 (LTS) (BCM), 2018 U.S. Dist. LEXIS 13961 (S.D.N.Y. Jan. 29, 2018), is similarly inapposite because the plaintiff there alleged a threat of only economic harm that was compensable by money damages.

[5]    Defendants' quotation from *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 n.7 (2d Cir. 1999) – cautioning not to substitute judgment of qualifications for promotion and tenure involving "inquiry into aspects of arcane scholarship" beyond judicial competence – shows the difference between that context and plaintiff's situation.  *Bickerstaff* does apply, as the quoted portion recognizes, to confirm that courts properly evaluate matters that "have been used as the mechanism to obscure discrimination," *id.* – as plaintiff alleges here.

        Similarly, the plaintiff in *Faro v. New York Univ.*, 502 F.2d 1229, 1230, 1232 (2d Cir. 1974) (internal quotation marks omitted), unlike Dr. Hornig, sought to enjoin a change in her *employment* status, requiring the court to make subjective judgments on "the university's recruitment, compensation, promotion and termination" procedures; a "discriminating analysis of the qualifications of each candidate for hiring or advancement, taking into consideration his or her educational experience, the specification of the particular position open and, of great importance, the personality of the candidate"; and the damage of those "who find that they have to make adjustments in life when the opening desired by them does not open" in their competition with other candidates.  In contrast, Dr. Hornig seeks to prevent harmful changes by defendants to her physical biological samples, to objectively measurable access to resources previously available to her under grants, and to the specific obligations to her set forth in her grants.

evaluation – but rather whether defendants fulfilled their obligation to plaintiff and to her government funders – matters that courts are certainly qualified to decide.

Columbia's response to four of plaintiff's requests in her motion – written assurance of support of resources necessary for future grant applications, threatened destruction of her research samples, direct and remote access to Luminex-related computers, and laboratory space (*see* Hornig Suppl. Aff. ¶¶2, 4-5, 8, 42) – demonstrates that Columbia recognizes that the harms for which she sought judicial intervention need to be immediately addressed. They cannot be compensated by possible future money damages. Their agreement to provide these things also shows such provision does not unduly burden them.

Nor does Hornig ground her complaint on injury to her reputation from a denial of employment. She points to Columbia's failure to abide by its commitments that prevent her from completing her obligations under funded research and harm her ability to write successful grant applications. Her situation is different from the cases defendants cite (Def. Mem. at 17-19), which allege damages from employment discharge. In contrast, Hornig will suffer non-monetarily compensable injury that amounts to irreparable harm. As the court in *Pollis v. New Sch. for Soc. Research*, 829 F. Supp. 584, 601 (S.D.N.Y. 1993), *rev'd in part on other grounds*, 132 F.3d 115 (2d Cir. 1997), recognized, interferences with a plaintiff's being able to carry out her academic responsibilities may constitute irreparable harm. If she

> encounters a denial of office space reasonably necessitated by her responsibilities, a denial of full library privileges, a barring of the door to the computer facilities and a pretense on the part of the institution telephone switchboard that Pollis is no longer affiliated . . . then the Court might well take a different view of the matter.

*Id.*, 829 F. Supp. at 601. These actions are similar to Columbia's, which support the relief sought.[6]

When Hornig wrote to Dean Fried on June 8 (ECF No. 34-2), she explained the interference with being able to do her grant work and the work necessary to prepare future grant applications, not damage to reputation. The injury from Columbia's destruction of Hornig's samples would not diminish Hornig's reputation. Plaintiff does not complain in this motion about loss of or change in academic or employment status as irreparable harm. (Hornig Aff. ¶¶45-91) She does not allege damage to reputation except to the extent (a) that interference with completion of her research and meeting grant deadlines will harm her reputation with funding sources and her ability to obtain future grants (Hornig Aff. ¶89), or (b) that her exclusion from meetings and decisions relating to her research raises concerns about input from others funded under her grants and questions about her role in projects and ability to meet her obligations (Hornig Aff. ¶82). As plaintiff showed (Pl. Mem. at 10-15), injuries like these have been held to constitute irreparable harm.

## C.    *Plaintiff has shown likely success.*

Although defendants dispute certain of plaintiff's allegations on the merits (Def. Mem. at 22-23), they offer no dispositive facts to show her claims actually lack merit. For example, Hornig presents facts to show defendants' asserted reasons for evicting her from the Center are false, do not justify such action, and/or do not explain why she cannot go back to the Center to perform her work free from Lipkin's adverse behavior. (*See* Hornig Suppl. Aff. ¶¶53-70) As discovery has just started, they cannot show there are not "serious questions going to the merits

---

[6]    The plaintiff in *Peck v. Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 412-13 (S.D.N.Y. 2013) – unlike Hornig – alleged only those injuries from employment discharge compensable by money damages. Similarly, plaintiff in *Berman v. N.Y.C. Ballet Inc.*, 616 F. Supp. 555, 557-58 (S.D.N.Y. 1985), alleged no injury not compensable by monetary or make whole equitable relief.

7

to make them a fair ground for litigation." *Ja Qure Al-Bukhari v. Dep't of Corr.*, 720 Fed. Appx. 655, 656 (2d Cir. 2018) (summary order).  Nor does the comparison that Lipkin proposed and supported Thomas Briese for promotion, but did not do so for Hornig, lose force because Briese was not promoted.  (Def. Mem. at 22 n.11)  The point is that Lipkin treated a similarly-situated man differently and more favorably in his proposal and support.

Additionally, given the allegations of retaliation (*see* Hornig Suppl. Aff. ¶¶33, 58, 62, 70-72), defendants cannot persuasively argue that a jury, applying a "keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent," could not find that retaliation played some role in defendants' actions against Hornig under the New York City Human Rights Law.  *Alvarado v. Nordstrom, Inc.*, 685 Fed. Appx. 4, 9 (2d Cir. 2017) (summary order).  Defendants fail to address the several examples of retaliatory conduct that, in addition to constituting irreparable harm (Pl. Mem. at 12), demonstrates Hornig's likely success on retaliation and deters her colleagues from aiding her and/or making similar claims of unlawful conduct (*see* Hornig Suppl. Aff. ¶¶33, 58, 62, 70-72).

**D.** _**The balance of hardships favors plaintiff.**_

Defendants claim only that they will suffer more hardship than plaintiff under a preliminary injunction, which is neither true nor logical.  First, plaintiff is not asking for anything more than that defendants fulfill their obligations to plaintiff as set forth in their grant applications and provide her the resources it has committed or which are necessary for her to secure future funding and publish papers based on her research.  She is not asking to be treated better than any other Columbia faculty member, just that she be given what defendants have agreed to provide her and have provided in the past according to funded grants.  Second, if

defendants, as they claim, are already providing, and will continue to give, everything plaintiff

needs, maintaining that support surely imposes no, nor additional, hardship.

## CONCLUSION

For the foregoing reasons and those in plaintiff's prior papers, the Court should grant a

preliminary injunction and such other relief as is just.

Dated: New York, New York             Respectfully submitted,
       October 19, 2018

                                    EISENBERG & SCHNELL LLP

                                By: _____
                                Herbert Eisenberg
                                heisenberg@eisenbergschnell.com
                                Julian R. Birnbaum
                                jbirnbaum@eisenbergschnell.com
                                233 Broadway, Suite 2704
                                New York, New York 10279
                                (212) 966-8900

                                Rosalind Fink (RF2492)
                                BRILL & MEISEL
                                rozfink@igc.org
                                845 Third Avenue, 16th Floor
                                New York, New York 10022
                                (212) 753-5599

                                *Attorneys for Plaintiff*