UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MADY HORNIG,

                Plaintiff,

    – against –

TRUSTEES OF COLUMBIA UNIVERSITY IN
THE CITY OF NEW YORK and WALTER IAN
LIPKIN,

                Defendants.

**OPINION AND ORDER**

17 CIV. 3602 (ER)

Ramos, D.J.:

       Mady Hornig, M.D., ("Hornig") sues Walter Ian Lipkin, M.D., ("Lipkin") and the Trustees of Columbia University in the City of New York for sex-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Human Rights Law of the City of New York ("NYCHRL"). Doc. 3 ¶ 1. Hornig now moves for a preliminary injunction. Doc. 23. For the reasons set forth below, Hornig's motion is DENIED.

**I.    Background**

       Since 2002, Hornig and Lipkin have served on the faculty of the Mailman School of Public Health ("Mailman") at Columbia University in the City of New York ("Columbia"). Doc. 3, ¶¶ 14, 21. Within Mailman, they worked at the Center for Infection & Immunity (the "Center"). *Id.* at ¶¶ 15, 17. Hornig, a non-tenure-track associate professor, *id.* at ¶ 98, served as the Director of Translational Research and Lipkin, a tenured professor of epidemiology, neurology, and pathology, *id.* at ¶ 17, served as the Director of the Center. *Id*. Hornig and Lipkin have often collaborated. *Id*. at ¶¶ 21–23. In addition, between 1999 and 2011, they also lived together, Doc. 12, ¶ 22, and maintained a "personal relationship." Doc. 3, ¶ 22.

Hornig alleges that Lipkin acted inappropriately towards her by discussing his sex-life with her in 2014, *id.* at ¶¶ 29, 31, 32, and by exposing his buttocks to her in 2014 and on July 9, 2015, *id.* at ¶¶ 27, 37. In the 2014 and 2015 incidents, he "demanded that she look at lesions on his buttocks." *Id.* On July 10, 2015, Hornig reported Lipkin's behavior to her colleague, Dr. Michaeline Bresnahan, *id.* at ¶ 42, and Lipkin learned of the complaint shortly thereafter, *id.* at ¶¶ 43–44, 49. On July 29, 2015, Hornig informed Joanne Bowman, Mailman's Director of Human Resources and Staff Affairs ("HR"), about the July 9 incident. *Id.* at ¶¶ 54–56.

After Hornig reported Lipkin's inappropriate behavior, he allegedly set out to "demolish" her. *Id.* at ¶ 87. According to Hornig's complaint, Lipkin (1) demoted her from medical director of the Center, *id.* at ¶ 50; (2) excluded her from various conversations related to her research projects, *id.* at ¶¶ 57, 80, 205, 218, 286, 288, 290–291; (3) made himself the Principal Investigator ("PI") on projects that Hornig had led, *id.* at ¶¶ 171–185, 206–207, 262–269, 338–340; (4) misrepresented himself as the sole PI on other projects that she led or collaborated on, *id.* at ¶¶ 202, 298, 300–301, 308–314, 341, 352; (5) complained to his colleagues about Hornig, *id.* at ¶¶ 61–64, 87, 89, 124, 154, 156, 28; (6) threatened to remove Hornig from grants, *id.* at ¶ 65; (7) refused to serve as a co-PI with Hornig, *id.* at ¶¶ 152, 293; (8) prohibited Hornig from applying for a grant, *id.* at ¶¶ 324–326; (9) denied Hornig's grant application, *id.* at ¶¶ 327–336; (10) prevented her from directing researchers or staff at the Center without his approval, *id.* at ¶¶ 70, 114, 115, 141, 145, 157, 159, 161, 163, 166, 200, 296, 299, 363–370; (11) forbid Hornig from analyzing research data, *id.* at ¶¶ 209, 315–321; (12) barred Hornig from accessing research data, *id.* at ¶¶ 195–201, 359; (13) withheld his recommendation for Hornig's promotion, *id.* at ¶¶ 98–101; (14) decreased the amount of money that various grants paid Hornig, *id.* at ¶ 304–307; supervised Hornig's communication with a Mailman employee, *id.* at ¶¶ 91–93; (15) spoke to

Hornig in a patronizing way, *id.* at ¶¶ 188–189; (16) showed no interest in Hornig's thoughts on an issue, *id.* at ¶ 190; and (17) forced Hornig to sit at a table with only administrative staff during an awards ceremony, *id.* at ¶ 169.  Hornig regularly reported these actions to Columbia.  *Id.* at ¶¶ 76, 83, 88, 89, 94, 120, 121, 218, 241, 243, 244–245, 248–254.

As a result of Lipkin's alleged wrongs and Columbia's failure to address them, Hornig claims that her health and career suffered.  She asserts that the Defendants' actions caused her shame, degradation, self-consciousness, a loss of self-esteem, social isolation, anxiety, depression, sleep disturbances, extreme exhaustion, gastro-intestinal disturbances, recurrent styes, respiratory infections, and an exacerbation of her Horner's syndrome.  *Id.* at ¶¶ 373–380.  Professionally, the Defefndants' actions allegedly harmed Hornig's reputation, *id.* at ¶¶ 385, 383, and stunted her professional development, *id.* ¶¶ 382, 384.

On April 29, 2016, Hornig filed a charge of discrimination based on sex and retaliation with the New York State Division of Human Rights.  Doc. 3-1, 2.  On December 21, 2016, the U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue.  Doc. 3-2.

On March 15, 2017, Hornig filed the instant complaint against Lipkin and Columbia for sex-based discrimination and retaliation in violation of Title VII and NYCHRL.  Doc. 3, ¶ 1.  In her complaint, she sought declaratory relief, injunctive relief, monetary damages, and fees.  *Id.* at 65.  Specifically, Hornig asked the Court to restrain "Lipkin, Columbia, its employees, agents, and officers from engaging in further discriminatory and retaliatory employment practices complained of herein."  *Id.*

According to Hornig, Lipkin has taken further discriminatory action against her since she filed her complaint by (1) planning to discard Hornig's research samples without her input or providing adequate storage alternatives, Doc. 24, ¶¶ 36–42; (2) restricting her contact with the

3

Center's administrative staff, *id.* at ¶ 58; (3) moving her office, *id.* at ¶ 54; (4) denying her access to the equipment and space that she needs to complete her work, *id.* at ¶¶ 46–49; (5) rescinding her membership in the Center, *id.* at ¶ 7; and (6) signing an agreement that gave him "sole rights to data and manuscripts" related to a project that Hornig had led, *id.* at ¶ 42.

On August 17, 2018, a year and three months after she filed the instant complaint, Hornig moved for a preliminary injunction. Doc. 23. In particular, she seeks (1) "laboratory space, staff, equipment, materials and support which Columbia had previously provided;" (2) a commitment that Columbia will, "at least four weeks before submission of future grant applications, . . . provide the same array of resources/facilities/environment that have been part of plaintiffs prior successful grant applications;" and (3) a prohibition on Lipkin "impeding or interfering with any relief ordered by the Court." Doc. 23, 2.

## II. Discussion

The request for a preliminary injunction is denied. "The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (citation omitted). In this Circuit, courts apply slightly different standards for each type of injunction. For the ordinary preliminary injunction, courts require parties to demonstrate that (1) they will suffer an "irreparable harm," and (2) either (a) they are "likely to succeed on the merits," or (b) that "that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005). For mandatory injunctions, "the movant must show a 'clear' or 'substantial' likelihood of success on the merits,

4

and make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (internal citations omitted).

The higher—mandatory injunction—standard applies here because Hornig asks the Court to force Lipkin and Columbia to alter the status quo as it now stands. Doc. 23, 2. Applying this standard, the Court finds that Hornig has failed to show a clear or substantial likelihood of success on the merits of any of her claims and has not made a strong showing of irreparable harm.

Hornig brings sex-based discrimination and retaliation claims under Title VII, a federal law, and NYCHRL. Doc. 3, ¶ 1. "Courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

**A.      Sex-Based Discrimination**

Hornig has not demonstrated a clear or substantial likelihood of success on her sex-based discrimination claims under either Title VII or NYCHRL. "Claims of sex-based discrimination under Title VII . . . are analyzed using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016). Initially, the employee "must establish a *prima facie* case of sex discrimination." *Id.* at 75. To do this, she must show that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* "The burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir.

1997) (per curiam) (emphasis added).  "Once the *prima facie* case has been shown, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (internal quotation marks omitted).  If the employer caries this burden, it shifts back to the employee and the employee's "admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997).

"To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Mihalik*, 715 F.3d at 110 (internal quotation marks and citations omitted).  The Second Circuit has articulated the Title VII and NYCHRL standards differently but "[i]t is unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims." *Id.* at 110 n.8.

Under either standard, however, Hornig's sex-based discrimination claims do not merit a preliminary injunction because she has not shown a clear or substantial likelihood of success on the merits.  Hornig references these standards in passing and declares her entitlement to relief in a conclusory fashion.  For the federal claim, she observes that it "require[s] a showing that the actions complained of constituted material adverse changes in terms and conditions of employment" and asserts that this is "a standard clearly met in each of the examples cited above." Doc. 25, 12. For the NYCHRL claim, she states, "There also can be no question that these actions resulted in Plaintiff being treated less well than other employees [i.e., all male faculty in the Center] because of her gender, which is the standard under the City law." Doc. 25, 13 (internal quotation marks omitted).  These pronouncements do not establish a clear or substantial likelihood of success

6

because, even if Hornig was subject to an adverse employment action or was treated less well than other employees, she has not shown that Lipkin or Columbia took these actions because of an illegitimate justification.

"The *sine qua non* of a gender-based discriminatory action claim under Title VII is that the discrimination must be *because of* sex." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) (internal quotation marks omitted). Hornig has not alleged that Lipkin or Columbia "made any remarks that could be viewed as reflecting discriminatory animus." *Patane*, 508 F.3d at 112. Instead, her claims rest completely on the fact that no one—neither man nor woman—received analogous treatment. Doc. 3, ¶¶ 24, 151, 165. To make this claim, Hornig "must show that she was treated differently from 'similarly situated' males." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). "To be 'similarly situated,' the individuals with whom [Hornig] attempts to compare herself must be similarly situated in all material respects." *Id. See also Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 125 (N.Y. App. Div. 2011) (affirming the dismissal of a NYCHRL discrimination claim because plaintiff failed to identify a similarly situated person).

Hornig attempts to carry this burden and to prove the existence of a similarly situated person with three conclusory statements: "No male faculty member in the Center is or has been subject to the same constraints or is or has been treated in this manner," Doc. 3, ¶ 24; "No other Center faculty members are refused these opportunities to build on their prior work and their prior investment in developing the intellectual and technical resources required to achieve their scientific vision," *id.* at ¶ 151; and "No other Center faculty have been precluded from submitting grant applications that contemplate the use of existing staff or propose to work with fellow faculty who have agreed to collaborate with them," *id.* at ¶ 165. Beyond these statements, Hornig makes no attempt to show that her male colleagues of similar experiences held similar titles or performed

similar work. In the absence of such evidence of a similarly situated colleague, Hornig has not demonstrated a clear or substantial likelihood of success on the merits and the Court denies her motion for preliminary injunction on that ground.

Hornig's citations provide little reason to question this conclusion. Hornig cites *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115 (9th Cir. 2000), to support her claim that she will clearly succeed on the merits. Doc. 25, 12. In *Chuang*, however, the court did not find that the plaintiff had made a sufficient showing of disparate treatment under Title VII to merit relief but, instead, found that the district court had erroneously entered summary judgment for the defendant university. 225 F.3d at 1120. Because the question here is clear success on the merits—not in an opposition to a motion for summary judgment—the Court finds this case unpersuasive. The Court regards the other cases cited by Hornig as similarly unhelpful because they, like *Chuang*, only speak to success at an intermediary stage of litigation. *Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F. Supp. 2d 483, 485 (S.D.N.Y. 2005) (denying a motion to dismiss and a motion to strike); *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 42 (N.Y. App. Div. 2009) (affirming a grant of a defendant's motion for summary judgment); *Bryson v. Chicago State Univ.*, 96 F.3d 912, 913 (7th Cir. 1996) (reversing part of a grant of summary judgment for a defendant university). In the absence of legal authority that supports a finding for a plaintiff on the merits of her sex-based discrimination claims, the Court rejects Hornig's request for a preliminary injunction because she has not shown a clear or substantial likelihood of success on the merits.

**B.     Retaliation**

Hornig has also not demonstrated a clear or substantial likelihood of success on her retaliation claims under either Title VII or NYCHRL. To make a *prima facie* case of retaliation

8

under Title VII, a plaintiff must present enough evidence to allow a rational tier of fact to find "(1) that she engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (internal quotation marks omitted). If the plaintiff carries this burden, the defendant must "then point[] to evidence of a legitimate, nonretaliatory reason for the challenged employment decision." *Id.* If the defendant does identify a permissible justification of its action, the burden shifts back to the plaintiff and "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Id.*

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citations omitted).

To make her retaliation claim in her brief, Hornig merely makes the following conclusory statement, "There can be no question that the harms befalling plaintiff as a result of defendants' actions after she spoke with HR would dissuade any rational employee from complaining about discrimination by Lipkin or by Columbia." Doc. 25, 14. Plaintiff has not shown a clear or substantial likelihood of success under either tests because, even assuming that she engaged in protected activity and that she fell victim to an adverse action that was reasonably likely to deter a person from engaging in protected activity, she has not persuasively argued that a causal connection exists between her allegedly protected speech and the employer's allegedly inappropriate action.

In the retaliation context, a plaintiff may establish causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through

9

other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Neither the parties nor the Court's independent research has identified such a clear articulation of the standard for finding the requisite causal relationship for the purpose of NYCHRL. State courts, however, have relied on similar types of evidence in the NYCHRL and Title VII context. *See, e.g.*, *Serdans v. New York & Presbyterian Hosp.*, 977 N.Y.S.2d 196, 199 (N.Y. App. Div. 2013) (reversing part of a denial of summary judgment on a NYCHRL retaliation claim because plaintiff failed to show "retaliatory animus"); *Cadet-Legros v. New York Univ. Hosp. Ctr.*, 21 N.Y.S.3d 221, 230 (N.Y. App. Div. 2015) (affirming part of a grant of summary judgment on a NYCHRL retaliation claim because plaintiff failed to show temporal proximity).

Under this standard, Hornig has not established the requisite causal relationship between her allegedly protected activity and her employer's allegedly inappropriate actions. In her complaint, Hornig alleges direct evidence of retaliatory animus by quoting Lipkin. She claims that (1) Lipkin instructed his assistant not to allow Hornig to attend a research meeting with colleagues because Hornig "causes conflict;" Doc. 3, ¶ 286; (2) forbid Hornig from submitting grants that relied on work performed by the Center's faculty or staff "until the legal issues are resolved," *id.* at ¶¶ 163, 166; (3) told a collaborator that Hornig could not perform tests for a study because of "complexities," *id.* at ¶ 315–321; and (4) told Hornig to "Go call your lawyer," instead of discussing an article's authorship with her, *id.* at ¶¶ 171–185. Lipkin denies making these statements. Doc. 12, ¶¶ 163, 166, 177, 176, 286, 315–321. At the motion to dismiss stage or even the summary judgment stage, these competing accounts may perhaps tip the balance in

Hornig's favor but, at the mandatory injunction stage, they do not and, as a result, the Court concludes that these claims do not evidence a clear or substantial likelihood of success on the merits.

Hornig also points to indirect evidence of animus by claiming that non-complaining colleagues did not receive the allegedly inappropriate treatment, Doc. 3, ¶¶ 24, 151, 165, and by emphasizing the close temporal proximity between her complaint and Lipkin's contested action, *id.* at ¶¶ 50–87. The Court finds neither argument persuasive. As explained above, Hornig claims that her colleagues did not receive similar treatment but she fails to explain how these colleagues are similarly situated, beyond their shared employer. To the same extent, the temporal proximity between the allegedly protected activity and the allegedly inappropriate behavior does not, in itself, demonstrate a clear or substantial likelihood of success on the merits. As the Second Circuit has held, "[T]emporal proximity alone is not enough to establish pretext in this Circuit." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014). *See also Cadet-Legros*, 21 N.Y.S.3d at 230 (finding, in an NYCHRL case that that "the temporal proximity between plaintiff's [internal discrimination] complaint and defendant's adverse action [was] alone insufficient to support a claim of retaliatory discharge"). If temporal proximity, without more, does not establish a claim at the summary judgment stage, it does not merit relief under the higher mandatory injunction standard that the Court apples here. For these reasons, the Court denies Hornig's motion for preliminary injunction on the basis of her retaliation claims.

C. **Irreparable Injury**

Even assuming arguendo that Hornig's facts do meet the heightened standard, the injunction would still not issue because she has also not made a strong showing of irreparable harm. "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and

11

imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). A delay "may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995) (internal quotation marks and citations omitted).

Lipkin and Columbia claim that Hornig's delay in bringing this motion requires the Court to deny the instant request for a preliminary injunction. Doc. 33, 11–14. Specifically, they claim that Hornig seeks to remedy injuries that her original complaint, filed over a year ago, sought to rectify. *Id.* at 12. In her reply to this argument, Hornig focuses primarily on two post-complaint injuries: her office's relocation and her data's destruction, Doc. 37, 3–4.

Hornig's complaint about the relocation of her office to another office in the same building borders on the frivolous. At minimum, Hornig has not demonstrated that her office's relocation qualifies as an injury at all, let alone one "that cannot be remedied if a court waits until the end of trial to resolve." *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66 (internal quotation marks omitted). Courts within this District have concluded that, moving an "office to a windowless, poorly ventilated room does not constitute an adverse employment action," *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) (listing cases), and Hornig has not provided any basis for the Court to conclude that she cannot return to her prior office after trial, if she succeeds.

With respect to the destruction of her data, Hornig has not convinced the Court that this injury is "actual and imminent." *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66. The Court has directed Lipkin and Columbia "to give Plaintiff advance notice of at least one week

before destroying any samples to which Plaintiff has asserted a claim." Doc. 29, 2. Columbia and Lipkin expanded the Court's order and promised to "circulate to plaintiff and all [Center] faculty a list of any samples that have been approved for disposal at *least two weeks* prior to their being discarded." Doc. 33, 26 (emphasis added). Hornig has not proffered any evidence to cause the Court to doubt the Defendants' representations to the Court.

For the remaining injuries, identified in both Hornig's original complaint and motion for a preliminary injunction, the Court agrees with the Defendants. Hornig filed her motion for preliminary injunction nearly fifteen months after she filed her complaint. She attempts to excuse her delay by pointing to the fact that the Court had referred the parties to mediation in July 2017 and that the mediation had failed by May 2018. Doc. 37, 4. Even excluding the period spent in mediation, the two and a half month delay undermines a finding if irreparability because "courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998). The argument that this standard only applies in the trademark context finds little support in the law. *See, e.g.*, *KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, No. 12-CV-2200 ER, 2012 WL 1521060, at *5 (S.D.N.Y. Apr. 30, 2012) (relying on *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, outside of the trademark context).

As a result, the Court finds that Hornig has not made a strong showing of irreparable harm and the Court denies Hornig's motion for preliminary injunction on this alternative basis.

## III. CONCLUSION

For the reasons set forth above, Hornig's motion for preliminary injunction is DENIED.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 23.

It is SO ORDERED.

Dated: November 5, 2018
New York, New York

Edgardo Ramos, U.S.D.J